## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

JASON R. WILLIAMS
NICOLE E. BURDETT

CRIMINAL NO. 20-055

SECTION "F"
JUDGE MARTIN L.C.
FELDMAN

MAGISTRATE (4)
MAGISTRATE JUDGE ROBY

### MEMORANDUM OF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

Defendants Jason R. Williams and Nicole E. Burdett seek immediate production of Henry Timothy's grand jury testimony and also any instructions or colloquy in which the grand jury was informed about Timothy's prior inconsistent statements. These materials are *Brady* and *Giglio* evidence and Defendants are entitled to their immediate production for use during the October 22, 2020 evidentiary hearing on defendants' motion to dismiss for selective and vindictive prosecution and, if needed, at trial.

As set forth in the defendants' motion to dismiss and oral argument, the government's unjustifiable reliance on the ever-changing statements of tax preparer Henry Timothy, contrary to all of the available objective evidence and the statements of Timothy's clients, is evidence of the government's selectivity and vindictiveness. Defendants' issues with Mr. Timothy go beyond his credibility—they go to the heart of the government's conduct. Based on statements by Mr. Timothy already known to Defendants, no rational prosecutor would institute a case like this— where the star witness has made repeated statements that are not only inconsistent but also totally contradictory—absent impermissible selective/vindictive bias. But while the Court has already ruled that defendants have provided some credible evidence of selective and vindictive prosecution, it has made clear that defendants must provide additional evidence to warrant

dismissal. That evidence must include (i) what Mr. Timothy told the grand jury and (ii) what the government told the grand jury about Mr. Timothy's prior inconsistent statements. By its very nature, Mr. Timothy's testimony to the grand jury must have been inconsistent with prior accounts he has given, in which he exculpated Mr. Williams and Ms. Burdett. And, in light of that fact, any instructions or colloquy in which the grand jury was informed about Timothy's prior inconsistent statements will speak to the government's improper motivation. In short, both of these categories of evidence go directly to the rationale and propriety of the government's prosecution of this case, and both are subject to mandatory immediate disclosure under *Brady* and *Giglio*.

## FACTUAL AND PROCEDURAL BACKGROUND

This motion centers on Henry Timothy and his inconsistent statements. The government first approached Mr. Timothy on May 15, 2018. Mr. Timothy was under investigation for failing to report more than $300,000 of his own income. Significantly, on October 22, 2018, IRS Agent Lori Marable attempted to interview Mr. Williams as a *witness* in that investigation, inquiring how long Mr. Timothy had been handling Williams' taxes and how much Mr. Timothy charged. Mr. Williams could not meet on October 22 because he was in trial in federal court. After the trial, he contacted Agent Marable several times about rescheduling, but she responded that the Timothy case was not pressing and that she would be in touch when she started working on it again.

A few months later, the government turned its investigation into Mr. Timothy upside down. On April 23, 2019, instead of interviewing Mr. Williams about Mr. Timothy, FBI Agent Todd Goodson and IRS Agent Timothy Moore interviewed Mr. Timothy about Mr. Williams. Mr. Timothy told the agents that he used spreadsheets and backup documents provided by Ms.

Burdett to prepare Mr. Williams' taxes. Rec. Doc. 79 ("Order and Reasons") at 7. He stated that he would provide a filing authorization to Ms. Burdett, that she would return the authorization signed by Mr. Williams, and that he would then file the returns. *Id.* Significantly, Mr. Timothy did *not* say that Ms. Burdett would pressure him to take improper deductions. *Id.* Likewise, when the agents questioned Mr. Timothy about a number of specific items on Mr. Williams' tax returns from 2012 through 2017, at no time did Mr. Timothy say that Ms. Burdett instructed him to take any of these deductions. *Id.*

Mr. Timothy made similar statements to undersigned counsel on April 26, 2019. Specifically, Mr. Timothy stated that Ms. Burdett would bring him Mr. Williams' QuickBooks and other records, that he would prepare the tax returns and send a filing authorization to Ms. Burdett, and that he would file Mr. Williams' tax returns upon receipt of the authorization. *Id.* at 7–8. Mr. Timothy further stated that he made the decisions about what deductions should be taken, that he would ask Ms. Burdett for clarifications if necessary, and that he believed he did everything appropriately. Mr. Timothy stated that there was nothing unusual about Mr. Williams' taxes and that the last thing he wanted to do was to get Mr. Williams in trouble. *Id.* at 8.

Mr. Timothy had a second interview with the U.S. Attorney, FBI Agent Goodson, and IRS Agent Moore on November 5, 2019. Initially, Mr. Timothy repeated substantially the same thing he told the FBI and undersigned counsel in April 2019—that he reviewed Mr. Williams' records and determined what expenses could be deducted. *Id.* at 8–9.

Cue the beginning of Mr. Timothy's inconsistent statements. After a private break with his attorney during that second interview, and for the first time—contradicting his previous interviews with the IRS, the FBI, and undersigned counsel—Mr. Timothy abruptly changed his

story and told the government that he "did things he should not have done" on Mr. Williams' tax return because Ms. Burdett asked him to. *Id.* at 9.

Meanwhile, Mr. Timothy's story has occasionally reverted back to the initial one: that Mr. Williams and Ms. Burdett did nothing wrong. For instance, in response to a request for admission to Mr. Timothy asking whether, at the time he prepared each tax return for filing by Mr. Williams's law firm, he believed that the deductions claimed on the return were appropriate and consistent with law, he *admitted* that belief. *Id.* at 10.

The government presented the charges against Defendants to a quorum grand jury on June 26, 2020. *Id.* at 14–15. Mr. Timothy's inconsistent statements notwithstanding, he testified before the grand jury, which returned the Indictment. *Id.* at 14–15, 46–47 n.31.

Mr. Williams and Ms. Burdett moved to dismiss the indictment, arguing that the government has either (1) improperly singled out Mr. Williams—and Ms. Burdett as collateral damage—for selective and vindictive prosecution on a tax case in which his actions were no different from that of hundreds of other clients of tax preparer Henry J. Timothy or (2) blatantly violated the defendants' due process rights by knowingly accepting false testimony from Mr. Timothy, its star witness. Rec. Doc. 51 at 2. Defendants also sought an evidentiary hearing. *Id.* at 2. Mr. Timothy's inconsistent statements are central to the defense's theory. As the Court explained, "[i]t is the government's *conduct* that the defense targets now and certainly any inconsistencies in Timothy's statements, insofar as they serve as a predicate to the government's prosecution theory, are presented by the defendants in an attempt to make out a *prima facie* case of selective or vindictive prosecution." Order and Reasons at 7–8 n.7 (emphasis added).

The Court denied the Motion to Dismiss without prejudice and ordered an evidentiary hearing, which is scheduled to take place on October 22, 2020. Specifically, while the Court

determined that Defendants have not yet satisfied the substantive standards for dismissal based on selective or vindictive prosecution, "they have presented 'some credible' evidence supporting both components of their selective prosecution or enforcement theory," such that "they satisfy the standard *Armstrong* propounded to obtain discovery." *Id.* at 29. *See also id.* at 38–39 ("[Defendants] have offered some evidence, which persuades the Court on this developing record that it may not simply accept the government's purportedly legitimate reasons and characterizations of the agents' motivations or knowledge to the exclusion of 'some evidence' offered by the defendants and including the government's admissions regarding the agents' intent. The shifting explanations from the prosecution coupled with the circumstantial evidence submitted by the defendants is sufficient to permit the defendants to probe the prosecution's intent during an evidentiary hearing, limited in scope.").

In its ruling, the Court recognized that the government has refused to disclose the transcript of Mr. Timothy's grand jury testimony to allow the defense and the Court to evaluate the extent to which the government has allowed false testimony to go uncorrected before the grand jury. *Id.* at 46–47 n.31.[1]  The Court also noted Ms. Burdett's request for an order that the government turn over the transcript and all evidence inconsistent with Mr. Timothy's grand jury testimony for the Court's consideration in connection with this motion to dismiss. *Id.* Nevertheless, the Court concluded that, at that stage, there was "nothing before the Court to place this squarely at issue for resolution." This motion is meant to do just that.

---

[1] As of September 8, 2020, the government has represented that it has not received the transcript of Mr. Timothy's grand jury testimony, and that it will only be provided as Jencks material the week prior to trial. Doc. 70, Ex. C.

# ARGUMENT

**I.     The government is constitutionally obligated to search for and turn over *Brady* material immediately.**

The Fifth Amendment requires the government to disclose to the defense all evidence in its possession, custody, and control that is favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady* and its progeny impose on the government an affirmative duty to disclose favorable evidence to the defense, even if the defense never specifically requests it. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

When it comes to post-conviction appeals asserting that prosecutors violated a defendant's due process rights by failing to produce exculpatory evidence, the familiar *Brady* standard requires that the defendant show that "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). That standard governs the mine-run of *Brady* issues, as they seem to arise most frequently in the post-conviction appeal process— *after* the government has apparently failed to live up to its disclosure obligations. But it does not govern this motion.

Unlike a post-conviction *Brady* appeal, a pretrial motion seeking the production of *Brady* material has a much simpler standard. The accused need not prospectively prove the suppression or materiality of the evidence. Rather, the standard is whether it is *favorable* to the defense, without regard to whether the Government believes it may impact the outcome of the case:

> [t]he question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding  might change the outcome of the trial going forward, but whether the evidence is favorable, and therefore must be disclosed. . . . The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if

so, it must be disclosed without regard to whether the failure to disclose it would likely affect the outcome of the upcoming trial.

*United States v. Mix*, 2:12-cr-00171-SRD-ESS (E.D. La.), Order (Dec. 11, 2012), at 6 (Doc. 155) (quoting *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) and ordering pretrial disclosure of *Brady* materials). *See also United States v. George*, No. 17-cr-201, 2019 U.S. Dist. LEXIS 174403, at *7 n.17 (E.D. La. Oct. 8, 2019) ("Courts have noted the distinction between the materiality standard applied to post-conviction appellate review of alleged *Brady* violations and the favorability standard applied to pretrial disclosure obligations."); *United States Attorneys' Manual* § 9-5.001 ("Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence.").[2]

In addition, Louisiana has adopted Rule of Professional Conduct 3.8, entitled "Special Responsibilities of a Prosecutor," which provides that a prosecutor "shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense . . . ." Rule 3.8(d). The Supreme Court has recognized that Rule 3.8(d) imposes a higher standard on prosecutors than the standard mandating disclosure of exculpatory evidence under *Brady*. *See Kyles*, 514 U.S. at 437 ("[*Brady*] requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.").

---

[2] *See also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (explaining that "[t]he 'materiality' standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials," and that "the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense" (quoting *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239–40 (D. Nev. 2004))).

The Department of Justice also "encourage[s] [prosecutors] to provide discovery broader and more comprehensive than the discovery obligations" required by the Federal Rules of Civil Procedure, *Brady*, and *Giglio*. Memorandum for Department Prosecutors from David W. Ogden, Deputy Attorney General, *Guidance for Prosecutors Regarding Criminal Discovery* (Jan. 4, 2010), available at https://www.justice.gov/jm/criminal-resource-manual-165-guidance-prosecutors-regarding-criminal-discovery. Moreover, for purposes of *Brady*, "the format of the information does not determine whether it is discoverable." *Id.* Even exculpatory information provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *Id.*

*Brady* is often said to be a self-executing disclosure obligation. But when the government is less than forthcoming, courts may exercise their broad discretion to compel pretrial production of *Brady* material. *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002); *accord United States v. Campagnuolo*, 592 F.2d 852, 857 & n.2 (5th Cir. 1979) (noting that the trial court acts within its "sound discretion" to order pretrial disclosure of *Brady* material and rejecting as "without merit" the prosecution's argument that it did not have to comply with that order); *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984) ("The district court may dictate by court order when *Brady* material must be disclosed, and absent an abuse of discretion, the government must abide by that order."); *United States v. Cerna*, 633 F. Supp. 2d 1053, 1057 (N.D. Cal. 2009) (ordering the pretrial disclosure of *Brady* material based on the court's survey of caselaw and conclusion that "district courts have authority to order *Brady* material to be disclosed prior to trial"); *United States v. Hart*, 760 F. Supp. 653, 655 (E.D. Mich. 1991) (same).

Courts have inherent authority to manage their dockets. *United States v. Colomb*, 419 F.3d 292, 300 (5th Cir. 2005). And that authority includes the power to order pretrial disclosure of *Brady* material. *See, e.g.*, *United States v. McKinney*, 758 F.2d 1036, 1041 (5th Cir. 1985) (invoking the district court's pretrial order that the prosecution comply with the accused's request for all *Brady* materials); *United States v. Villarreal-Arelis*, No. SA-16-CR-254-XR, 2016 U.S. Dist. LEXIS 143872, at *4 (W.D. Tex. Oct. 18, 2016) (invoking pretrial order imposing deadlines for the government to disclose "all materials" required by *Brady* and *Giglio*); *United States v. Coppa (In re United States)*, 267 F.3d 132, 146 (2d Cir. 2001) (remanding case to afford district court the "opportunity to determine what [*Brady*] disclosure order, if any, it deems appropriate as a matter of case management"); *United States v. Adan*, 913 F. Supp. 2d 555, 586–91 (M.D. Tenn. 2012) (ordering the production of *Brady* material 42 days prior to trial over the prosecution's objection).

Such an order is particularly appropriate here. Defendants' Motion to Dismiss in this complex, 11-count tax case is premised on the government's motivation and conduct—not on substantive defenses to the charges. The Court has already ordered an evidentiary hearing to allow Defendants to develop this theory. As the Court has recognized, Mr. Timothy's inconsistent statements and the government's acceptance of his changed story are central to that theory. *Brady* materials supporting that theory be should be disclosed *now*—when that theory is being developed and tested. Indeed, continuances would likely flow from any late *Brady* disclosures shortly before or during trial given the hundreds of thousands of documents in discovery, many witnesses, and complexity of the issues. *See, e.g.*, *United States v. Cerna*, 633 F. Supp. 2d 1053, 1058 (N.D. Cal. 2009) (setting *Brady* disclosure schedule and discussing the "need to avoid disruptive trial continuances). The Court should not wrangle with any potential

*Brady* issues on the eve of trial when it could resolve those issues now through an appropriate

pretrial order. *See, e.g.*, *United States v. Khlgatian*, No. 11-cr-105, 2012 U.S. Dist. LEXIS

126521, at *9 (E.D. La. Sep. 5, 2012) (ordering, in response to defendants' motion to compel

prompt disclosure of *Brady* and *Giglio* material, *in camera* review of *Brady* and *Giglio* evidence

five weeks before trial where twenty defendants were charged with healthcare fraud, money

laundering, and conspiracy); *United States v. Rigas*, 779 F. Supp. 2d 408, 415 n.5 (M.D. Pa.

2011) (granting defendants' motion to compel production of *Brady* material, noting that the

Ogden Memo "provides substantial guidance to prosecutors and instructs them to move beyond

strict adherence to the basic tenets of *Brady* by engaging in liberal discovery," and refusing to

"allow this case to devolve into one that sacrifices the [d]efendants' due process rights based on

an overly restrictive interpretation of the Government's discovery obligations"); *United States v.

Lujan*, 530 F. Supp. 2d 1224, 1257 (D.N.M. 2008) (granting defendants' request for pretrial

disclosure of exculpatory evidence and ordering the Government to disclose all *Brady* material

180 days before trial).

## II.    *Giglio* is *Brady*, and supersedes the Jencks Act.

The Government should be required to promptly produce all *Giglio* material, for

essentially the same reasons that it must also produce all *Brady* material. *Giglio* material includes

"evidence important and useful for impeachment purposes." *Calley v. Callaway*, 519 F.2d 184,

221 (5th Cir. 1975) (citing *Giglio v. United States*, 405 U.S. 150 (1972)). It has been established

since *Brady* itself that *Brady* materials—evidence known to have exculpatory value to the

defense—must be disclosed "upon request" of the accused. *Brady*, 373 U.S. at 87–88. And

*Giglio* itself established that *Giglio* material is *Brady* material. *See Giglio*, 405 U.S. at 154

("When the reliability of a given witness may well be determinative of guilt or innocence,

nondisclosure of evidence affecting credibility falls within this general [*Brady*] rule." (quotations omitted)). *See also United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule."); *Kyles*, 514 U.S. at 433 ("[In *Bagley*], the Court disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes.").

Because impeachment evidence *is* exculpatory evidence under *Brady*, and can make the difference between conviction and acquittal, *see Bagley*, 473 U.S. at 676, it must be disclosed upon request of the defense. *See, e.g.*, *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) ("It is well established that upon a request by a defendant, the Government has a duty to turn over all material exculpatory evidence in its possession, including material impeachment evidence relating to Government witnesses . . . ." (citing *Brady*, 373 U.S. at 87)). In short, as Judge Roby recently reiterated, "*Brady* material is any information in the possession of the government that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. This includes *Giglio* evidence that would impeach a government witness, *e.g.*, by showing bias or interest." *United States v. Satary*, No. 19-197, 2020 U.S. Dist. LEXIS 181982, at *8 (E.D. La. Oct. 1, 2020).

Importantly, *Giglio* material is distinct from *Jencks* material. The Jencks Act, 18 U.S.C. § 3500, "requires the government to release to the defendant, after a witness's direct examination, any statement of the witness in the government's possession which relates to the subject matter of the witness's testimony." *United States v. Guerrero*, 768 F.3d 351, 363 (5th Cir. 2014) (quotations omitted). *Jencks* is a statutory backstop. The rule established in *Brady* and *Giglio*, however, is constitutional in origin. And those decisions came after the Jencks Act was

enacted. To be sure, "[t]he decision in *Brady* some six years after the enactment of the Jencks

Act inevitably gave rise to the issue of whether the timing of *Brady* or the Jencks Act was

controlling." *United States v. Shvarts*, 90 F. Supp. 2d 219, 228 (E.D.N.Y. 2000). But "in seeking

to harmonize the Jencks Act and *Brady*, it makes no sense to indulge in a crabbed interpretation

of a constitutional right, like *Brady*, and an expansive interpretation of a statutory one like

Jencks." *United States v. Snell*, 899 F. Supp. 17, 21 (D. Mass. 1995) (citing *United States v.*

*Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989)). In other words, "The Brady obligations are not

modified merely because they happen to arise in the context of witness statements. The

government therefore has the obligation to produce to defendant immediately any exculpatory

evidence contained in its Jencks materials, including exculpatory impeachment material . . . ."

*Poindexter*, 727 F. Supp. at 1485. *See also United States v. Narciso*, 446 F. Supp. 252, 270 (E.D.

Mich. 1977).

Thus, with respect to the timing of disclosure, *Brady* and *Giglio* supersede the more

limited protections of the Jencks Act, and require early disclosure for materials that fall within

*Brady*—including impeachment materials:

> [T]he congressional rule on the timing of disclosure of prior
> statements of witnesses codified in the Jencks Act—promulgated
> some six years before *Brady* was decided—cannot be read to render
> nugatory the superior constitutional obligation imposed on the
> Government by *Brady* and its progeny.

*United States v. Lino*, 2000 U.S. Dist. LEXIS 18753, at *46 (S.D.N.Y. Dec. 29, 2000). *See also*

*United States v. Avellino*, 129 F. Supp. 2d 214, 218 (E.D.N.Y. 2001) ("[D]ue process requires

that the government's *Brady* obligation trumps the statutory time table set forth in 18 U.S.C.

§ 3500 to the extent a temporal conflict is found to exist."); *United States v. Trie*, 21 F. Supp. 2d

7, 23, 26 (D.D.C. 1998) (explaining that "the existence of a duty to disclose witness statements at

trial pursuant to the Jencks Act does not eviscerate the government's *Brady* obligation to disclose

witness statements well in advance of trial if those statements also fall under *Brady*" and that "[t]o extent that witness statements of key government witnesses are exculpatory or impeaching, however, they constitute *Brady* material, and the government has an obligation to disclose those statements" (citation omitted)); *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (1988) ("[U]nder *Brady* . . . the government has additional obligations deriving from the Fifth Amendment to disclose exculpatory material, and the limitations on discovery contained in the Jencks Act do not lessen those obligations.").

Thus, the government's position that *Giglio* disclosures like Mr. Timothy's grand jury transcript must await the time of *Jencks* disclosures is misplaced. Instead, under the constitutional rule articulated by *Brady*, *Giglio* materials must be produced in advance of trial. The direct and inevitable result of the Government's withholding of *Giglio* material is to hamper the preparation of the defense by denying the accused time and opportunity it would otherwise have to make use of the information. *See United States v. Bin Laden*, 2001 U.S. Dist. LEXIS 959, at *10 (S.D.N.Y. Feb. 2, 2001) ("To permit the prosecution to withhold exculpatory evidence despite a request until such time as the prosecutor chooses to disclose it, is to permit the prosecutor to control, to some extent, the preparation of a defense."). To permit *Giglio* material to be withheld without justification—after it has been requested by the defense—subverts fairness to gamesmanship, and is fundamentally at odds with the principles of due process and fair play that underlie *Giglio* and *Brady*.

Nor are any of the typical justifications for delaying production of *Giglio* material present in this case—namely, the concerns that premature disclosure of the material may (i) implicitly disclose the identities of the witnesses the government will call at trial and (ii) expose the witnesses to possible tampering or even danger. *See, e.g.*, *Lino*, 2000 U.S. Dist. LEXIS 18753, at

*48 (discussing "potential dangers of the manufacturing of defense evidence and witness tampering" in racketeering trial where one of the charges was witness tampering); *United States v. Frank*, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998) (discussing risk to witness's safety in capital kidnapping/murder trial). First, it is already obvious that Mr. Timothy is a government witness— indeed, he is the government's *star* witness. Second, witness-tampering concerns have no place in this case. This is not a murder prosecution or racketeering case. Defendants are represented by counsel who will ensure that no witness is pressured improperly. *See, e.g.*, *Khlgatian*, 2012 U.S. Dist. LEXIS 126521, at *9–10 (early *Giglio* disclosure where defendants were charged with healthcare fraud and money laundering); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) ("[T]his case charges Medicare fraud—not narcotics trafficking or murder."); *Trie*, 21 F. Supp. 2d at 22 n.14 (government showed no evidence of danger of witness tampering sufficient to avoid disclosure of identities of witnesses).

**III.    The defense is entitled to Timothy's grand jury testimony and any instructions or colloquy in which the grand jury was informed about Timothy's inconsistent statements.**

Despite Defendants' requests, the Government has not disclosed Mr. Timothy's grand jury testimony or any instructions or colloquy in which the grand jury was informed about Timothy's prior inconsistent statements. *See* Rec. Doc. 70, Ex. C. Particularly given the centrality of Mr. Timothy's inconsistent statements to the defense's theory of selective and vindictive prosecution (already supported by some evidence), these materials are straightforwardly subject to disclosure under *Brady* and *Giglio*.

Federal Rule of Criminal Procedure 6(e) authorizes disclosure of matters occurring before a grand jury at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. *United States v. Williams*, No. 20-55, 2020 U.S. Dist. LEXIS 142030, at *16 (E.D. La. Aug. 10, 2020). As this Court stated

in granting Defendants' request for discovery regarding the process employed in specially

convening the grand jury, requests for disclosure of grand jury matters are directed to the Court's

discretion, but requests should be granted only if the moving party shows that a particularized

need exists for the materials that outweighs the policy of secrecy." *Id.* (quotations omitted).

In particular, as relevant here, "[p]arties seeking grand jury transcripts under Rule 6(e)

must show that the material they seek is needed to avoid a possible injustice in another judicial

proceeding, that the need for disclosure is greater than the need for continued secrecy, and that

their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops*

*Nw.*, 441 U.S. 211, 222 (1979). Ultimately, the touchstone guiding the Court's discretion is that

"disclosure is wholly proper where the ends of justice require it." *United States v. Socony-*

*Vacuum Oil Co.*, 310 U.S. 150, 234 (1940).

Defendants once again meet that standard, this time with respect to Mr. Timothy's grand

jury testimony and any instructions or colloquy in which the grand jury was informed about

Timothy's prior inconsistent statements. The Court has already noted that Defendants have

"point[ed] to evidence that contradicts Timothy's changed story (thereby undermining the

prosecution's theory)." Order and Reasons at 10. It is clear that Mr. Timothy presented his

*changed* story to the grand jury—a story directly contradicting Mr. Timothy's prior statements

and other objective evidence known to the government. This goes to more than Mr. Timothy's

credibility—it directly implicates the government's acceptance of testimony that it had

overwhelming reason to believe was false. Moreover, Mr. Timothy's testimony—and any

instructions or colloquy in which the grand jury was informed about Timothy's prior inconsistent

statements—raises a likelihood that the government has allowed false testimony to go

uncorrected before the grand jury. All this would lend substantial evidentiary support to

Defendants' theory of selective and vindictive prosecution: the government, motivated by impermissible bias, accepted a changed story by Timothy that is demonstrably false and contradicted by all objective evidence.

*Brady* and *Giglio*, consistent with Rule 6(e), require that these grand jury materials be produced. *See Thibodeaux v. Normand*, No. 13-5903, 2016 U.S. Dist. LEXIS 166339, at *21–22 (E.D. La. Dec. 1, 2016) ("***If evidence of lies to the grand jury exists, it could only be obtained through a review of the grand jury testimony***. Accordingly, to the extent such evidence might provide a basis for reconsideration of the prescription analysis on Thibodeaux's Fourth Amendment claim, the grand jury testimony is highly important. Thibodeaux could not determine whether testimony before the grand jury was false without reviewing that testimony. The Court finds deposition of grand jury witnesses would be a poor substitute in this situation." (emphasis added)); *Taylor v. Cain*, No. 06-2482, 2007 U.S. Dist. LEXIS 104004, at *42 (E.D. La. Apr. 9, 2007) ("[A] must disclose to the defendant any grand jury testimony constituting material exculpatory evidence as per *Brady v. Maryland*."); *United States v. Turner*, No. CR05-355C, 2007 U.S. Dist. LEXIS 24850, at *12–13 (W.D. Wash. Apr. 3, 2007) ("Defendant seeks any 'information that any witness testimony in a Report of Interview or Grand Jury transcript is incorrect or contradicted by later witness statements.'. . . ***[P]rior statements of a witness that are both material and inconsistent with his anticipated testimony fall within the Brady rule***. The Government concedes that disclosure of such material is required. The Court agrees with this conclusion as well as with the Government's clarification that the discoverable prior statement must be made by the same person who is to be the trial witness and that one witness's prior inconsistencies with statements of other trial witnesses do not trigger disclosure.").

## CONCLUSION

For the foregoing reasons, the Court should order the government to produce Mr.

Timothy's grand jury testimony and any instructions or colloquy in which the grand jury was

informed about Timothy's prior inconsistent statements immediately, under *Brady* and *Giglio*.


Respectfully submitted,

*/s/ Michael W. Magner*                              */s/ William P. Gibbens*

| | |
|---|---|
| MICHAEL W. MAGNER (#1206) | William P. Gibbens, 27225 |
| AVERY B. PARDEE (#31280) | SCHONEKAS, EVANS, MCGOEY |
| Jones Walker LLP | & MCEACHIN, L.L.C. |
| 201 St. Charles Ave., Suite 5100 | 909 Poydras Street, Suite 1600 |
| New Orleans, LA 70170 | New Orleans, Louisiana |
| Telephone (504) 582-8316 | 70112 |
| apardee@joneswalker.com | (504) 680-6065 |
| mmagner@joneswalker.com | billy@semmlaw.com |
| *Attorneys for Nicole E. Burdett* | *Attorney for Jason R. Williams* |


## CERTIFICATE OF SERVICE

I certify that on October 16, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System, which will send a copy of the pleading to all parties via email.


*/s/ Michael W. Magner*